## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

SI RESOURCES INC.,                              )
                                                )
      Plaintiff,                            )
                                                )
      v.                                    )      Case No. 4:20CV1465 JCH
                                                )
CITY OF MANCHESTER, MISSOURI, et al.,  )
                                                )
      Defendants.                           )

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants City of Manchester, Missouri's ("City") and Melanie Rippetoe's ("Rippetoe" and collectively "Defendants") Motion to Dismiss pursuant to Rule 12(b)(1), filed January 22, 2021. (ECF No. 14). The motion is fully briefed and ready for disposition.

## BACKGROUND

Before delving into the specifics of the instant case, the Court finds some additional background information is helpful in understanding the nature of the present suit. Doctor John's, Inc. ("Dr. John's") opened a store in Manchester in 2019 (the "Premises"). The Premises was located in a C-1 Commercial zoning district. The permitted retail uses for a business located in such a zoning district allowed the operation of a "variety and department store not to exceed 10,000 square feet," and the sale of "apparel and accessories." (*See* ECF No. 1-3, PP. 1-2). Certain "Sexually Oriented Retail Uses" are also permitted in the C-1 district, pursuant to Code Section 405.240(K). (*Id.*, PP. 2-3).

According to Defendants, Dr. John's used the Premises in a manner that was not permitted in the C-1 district, and was not permitted by its occupancy permit. The City therefore initiated a

suit in state court to enforce its zoning laws.  (*See* ECF No. 1-4).  On August 6, 2019, the state court entered a Consent Temporary Restraining Order ("TRO") prohibiting Dr. John's, "its agents, servants, employees, attorneys, all persons in active concert or participation with it, and all persons who have or shall receive actual notice of [the TRO]" from selling "novelties…or other merchandise that does not qualify as 'apparel and accessories'" at the Premises.  (*See* ECF No. 15-3, P. 7).

After the state court entered the TRO, the parties continued litigating the City's claim for a permanent extension of the injunctive relief.  Dr. John's filed a counterclaim alleging, among other things, that the City's zoning regulations were unconstitutionally vague and ambiguous, and that the City's actions had violated Dr. John's due process rights as well as its rights under the First and Fourteenth Amendments.  (*See* ECF No. 15-4).  Dr. John's also filed a motion for summary judgment in the state action, seeking an order that the City's zoning regulations were unconstitutionally vague and constituted impermissible content based regulation.  (*See* ECF No. 15-5).

The state court held a multi-day evidentiary hearing on the City's request for a permanent injunction.  During the hearing Defendant Rippetoe, the City's Director of Planning and Zoning, testified that Dr. John's use of the Premises was not a lawful use under any of the permitted retail uses in the C-1 district, including as a "variety or department store."  (*See* ECF No. 15-6, PP. 16-20).  While the evidentiary hearing was still ongoing, Dr. John's filed with the City a new application for a business license to use the Premises as a "variety and department store not to exceed 10,000 square feet."  Dr. John's then filed a pleading entitled "Suggestion of Mootness," but the state court did not dismiss the case.  (*See* ECF No. 15-9).

The state court heard evidence and argument that Dr. John's use of the Premises was not compliant with either the "apparel and accessories" use, or with the "variety and department store" use allowed by the applicable zoning regulations. Dr. John's did not object to such testimony, nor did it offer evidence that its use of the store satisfied the classification of a "variety and department store."

On December 3, 2019, the state court issued an Order and Judgment granting the City's request for a permanent injunction regarding Dr. John's use of the Premises, and denying Dr. John's motion for summary judgment. (*See* ECF No. 1-5). The state court found that Dr. John's had violated the City's zoning regulations by engaging in the sale of items that were not allowed under the applicable zoning ordinance. The state court explicitly rejected Dr. John's claims that the City's zoning regulations were vague and ambiguous, as well as Dr. John's claims that its due process rights or rights under the First and Fourteenth Amendments of the United States Constitution had been violated. The state court held that "the City was in no way restricting content of items sold," but instead was "merely enforcing the zoning codes and regulations in place at the time of the application." (*Id.*, P. 12). The state court further found that "there is no facial nor applied constitutional infirmity to the provisions of Chapter 405, or 505 of the Ordinances of the City of Manchester that violates either the First or Fourteenth amendments of the United States Constitution." (*Id.*, PP. 12-13). The state court therefore made permanent its TRO, enjoining Dr. John's, "its agents, servants, employees, attorneys, all persons in active concert or participation with it, and all persons who have or shall receive actual notice of [the TRO]" "from violating the Ordinances and Zoning regulations of the City of Manchester, Missouri including those relating specifically to the C1 zoning district sales and permitted uses . . .." (*Id.*, P. 16). In an Order and Judgment entered February 6, 2020, the state court entered judgment for the City on Count I of its

3

Petition for a Declaratory Judgment, and further "retain[ed] jurisdiction over this matter to enforce the permanent injunction and to address any matters relating to Dr. John's contempt of the permanent injunction." (*See* ECF No. 15-12).

On October 9, 2019 (before the state court entered its judgment in the state case), Dr. John's filed a Complaint against the City and Rippetoe in this Court (the "Dr. John's suit"), challenging as unconstitutional the Manchester zoning ordinance the City accused Dr. John's of violating. (*See* Case No. 4:19CV2739 JCH, ECF No. 1). Dr. John's asserted that, "in an effort to appease Defendants and render the prior dispute moot," it had submitted paperwork to relicense the store as a variety and department store. (*Id.*, ¶ 13). Dr. John's maintained Rippetoe sent an email to Dr. John's, "both advising that she needed additional documentation, and also stating that it would be pointless to send the additional documentation, as the application will be denied." (*Id.*, ¶ 14 and att. Exh. A). For relief, Dr. John's sought, *inter alia*, (1) a declaration that the current definition of a "variety and department store" was unconstitutionally vague, or if it was not, that Dr. John's proposed use met said definition, and (2) a ruling that the City's refusal to process and/or approve Dr. John's application as a variety and department store violated due process, and thus requiring the City to process and approve the request within ten days. (*Id.*, P. 5).

While the Dr. John's suit was still pending with this Court, on March 9, 2020, Plaintiff SI Resources, "DBA Original Doctor John's Lingerie and Novelty Boutique," filed a commercial application for a "Re-Occupancy Permit" with the City.[1] (*See* ECF No. 15-2). The application is for the same Premises at issue in the state case, and SI Resources seeks to operate a "variety and department store."[2] Furthermore, Mr. John Haltom, who has held himself out as the owner of Dr.

---

[1] SI Resources is a sublessee of the Premises from Dr. John's. (Compl., ¶ 13).
[2] SI Resources acknowledges that it intends for the proposed store to sell the same items that Dr. John's was enjoined from selling. (*See* Compl., ¶ 29).

John's[3], is named as the President of SI Resources, and the company's email address is listed as

Doctorjohns@yahoo.com.

In response to SI Resources' filing, the City filed a motion to enforce the state court injunction against SI Resources on March 23, 2020.  (*See* ECF No. 15-1).  The motion is still pending, and was set for a hearing in state court on March 26, 2021.  (*See* ECF No. 15-13).[4]  In an Order entered March 31, 2020, this Court granted Defendants' Motion to Dismiss for lack of Jurisdiction in the Dr. John's suit, finding abstention pursuant to the doctrine articulated in *Younger v. Harris*, 401 U.S. 37 (1971), was appropriate.  (*See* Case No. 4:19CV2739 JCH, ECF No. 19).  Shortly thereafter, in a letter dated April 3, 2020, Mr. David A. Streubel, attorney for the City of Manchester, informed Mr. Haltom that the City would not take further action on SI Resources' application until its motion to enforce the injunction in state court was ruled.  (*See* ECF No. 16-2).

On October 13, 2020, SI Resources filed its Complaint in this case.  (ECF No. 1).  Plaintiff challenges the City's failure to grant or deny SI Resources' application for a re-occupancy permit to operate a "variety and department store."[5]  In Count I of its Complaint, Plaintiff alleges Defendants' refusal to process its re-occupancy application violates Plaintiff's right to procedural due process.  In Count II, Plaintiff asserts that the City's actions "in arbitrarily designating Plaintiff's business as within the provisions of its 'Adult-Related Businesses' ordinance" is a form

---

[3] Plaintiff does not dispute Defendants' assertion that Mr. Haltom has given multiple interviews during which he identified himself as the "founder" and/or "owner" of Dr. John's.  (*See* ECF No. 15-1, P. 2).

[4] It is unknown to the Court whether the hearing went forward as scheduled on March 26, 2021.

[5] Defendants maintain they responded to Plaintiff's application by seeking to enforce the state court injunction against Plaintiff.

of prior restraint, in violation of the First Amendment.[6]  In Count III, Plaintiff maintains the City's Adult-Related Businesses ordinance is unconstitutionally broad, in violation of the First Amendment.  In Count IV, Plaintiff alleges the ordinance violated Plaintiff's customers' "right to sexual privacy," in violation of substantive due process.  In Count V, Plaintiff alleges that it is the "beneficial owner of the real property" at issue, and thus the City's refusal to allow Plaintiff to utilize its property constitutes a "constructive taking."  In Count VI, Plaintiff claims the City's "arbitrary and capricious actions" prohibit the "sale of expressive materials in the City," and the city council unlawfully fails to allow reasonable alternative means of expression.  Finally, in Count VII Plaintiff claims unidentified ordinances deny Plaintiff equal protection of the law under the Fourteenth Amendment.

As noted above, Defendants filed the instant Motion to Dismiss on January 22, 2021, arguing that the Court should dismiss this case pursuant to the abstention doctrine articulated in *Younger v. Harris*, 401 U.S. 37 (1971)[7], because "[d]espite the pending motion to enforce, plaintiff seeks relief in this Court that would ultimately determine that state court motion and the state court's ability to enforce its own orders….[In other words,] while Plaintiff is not a named party in the state case, the object of this suit is to interfere with the state court's determination of whether to enforce its own injunction against Plaintiff."  (*See* Defendants' Memorandum in Support of 12(b)(1) Motion to Dismiss, P. 9).

---

[6] Defendants counter that Plaintiff fails to allege any action by the City designating Plaintiff's business as an Adult-Related Business.

[7] Defendants further assert that abstention is required pursuant to the *Colorado River* and *Brillhart-Wilton* abstention doctrines.  *See Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995); *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800 (1976); *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942).  Because the Court determines that abstention is appropriate under the *Younger* doctrine, it need not consider Defendants' alternative arguments regarding abstention under either the *Brillhart-Wilton* or *Colorado River* doctrines.

6

## DISCUSSION

"The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Allegheny Cnty. v. Frank Mashuda Co.*, 360 U.S. 185, 188 (1959). "Generally, a federal district court must exercise its jurisdiction over a claim unless there are 'exceptional circumstances' for not doing so." *Scottsdale Ins. Co. v. Detco Indus., Inc.*, 426 F.3d 994, 996 (8th Cir. 2005) (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16-19 (1983)); *see also Colorado River*, 424 U.S. at 817-18 (stating that federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them"). Hence, while a federal court's obligation to hear and decide a case is "virtually unflagging," federal courts apply judicially-created abstention doctrines in specific, limited circumstances. *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 73 (2013) (citations omitted). Relevant here is the *Younger* form of abstention. *See Younger v. Harris*, 401 U.S. 37 (1971).

*Younger* abstention initially only applied to federal interference with criminal claims. Out of concern for comity and federalism, however, the Supreme Court has expanded *Younger* protection to certain civil proceedings. *See, e.g., Sprint,* 571 U.S. at 73; *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 14 (1987); *Juidice v. Vail*, 430 U.S. 327, 335 (1977). Federal courts apply *Younger* abstention to avoid interfering with two kinds of state civil cases:  (1) enforcement proceedings and (2) cases involving "certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350, 367-68 (1989).

7

The Eighth Circuit recently observed that caselaw generates "[t]hree lines of inquiry for determining whether *Younger* abstention is appropriate."

> First, does the underlying state proceeding fall within one of the . . . "exceptional circumstances" where *Younger* abstention is appropriate?  Second, if the underlying proceeding fits within a *Younger* category, does the state proceeding satisfy what are known as the "*Middlesex*" factors?  And third, even if the underlying state proceeding satisfies the first two inquiries, is abstention nevertheless inappropriate because an exception to abstention applies?

*Minnesota Living Assistance, Inc. v. Peterson*, 899 F.3d 548, 551-52 (8th Cir. 2018) (citing *Middlesex Cty. Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)).

With respect to the first question, as noted *supra*, *Younger* abstention is applicable in civil enforcement proceedings that are akin to criminal prosecutions, and in proceedings that implicate a state's interest in enforcing the orders and judgments of its courts.  *Id.* at 552.  As further discussed below, the state proceeding at issue here fits neatly within the first of these categories.

A.     Civil Enforcement Proceeding

*Younger* abstention applies where a state-court civil enforcement proceeding is "'akin to a criminal prosecution' in 'important respects.'"  *Sprint*, 571 U.S. at 79 (quoting *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604 (1975)).  The *Sprint* Court identified several indicia of such civil enforcement proceedings.  *Id.*  First, "[s]uch enforcement actions are characteristically initiated to sanction the federal plaintiff, *i.e.*, the party challenging the state action, for some wrongful act."  *Id.* (citation omitted).  "In cases of this genre, a state actor is routinely a party to the state proceeding and often initiates the [state] action" and "[i]nvestigations are commonly involved, often culminating in the filing of a formal complaint or charges."  *Id.* at 79-80 (citations omitted).

Assessing the nature of the state action in this case, it clearly falls within this category. While the federal Plaintiff here, SI Resources, was not the defendant in the state action, the Court

has no trouble concluding that the state court orders issued in that case apply to Plaintiff.  As noted above, the permanent injunction applied to Dr. John's, and "its agents, servants, employees, attorneys, all persons in active concert or participation with it, and all persons who have or shall receive actual notice of [the TRO]."  In its application for a re-occupancy permit, SI Resources, a sublessee of the Premises from Dr. John's, identified itself as "DBA Original Doctor John's Lingerie and Novelty Boutique."    SI Resources further listed its email address as Doctorjohns@yahoo.com, and Mr. John Haltom has claimed ownership of Dr. John's in the past. Under these circumstances, the Court finds Plaintiff constitutes one in active concert or participation with Dr. John's, and thus is subject to the permanent injunction.[8]

The state proceeding was the result of the City's attempt to sanction Dr. John's for its violations of the City's zoning regulations.  Indeed, federal courts have routinely held that state proceedings dealing with land use and zoning issues are emblematic of the sort of state proceedings that are appropriately subject to *Younger* abstention.  *See, e.g., Huffman,* 420 U.S. at 611 (civil enforcement of nuisance law); *Sinclair Oil Corp. v. County of Santa Barbara,* 96 F.3d 401, 409 (9th Cir.1996) (internal quotation marks and citation omitted) ("land use planning is a sensitive area of social policy" which federal courts typically ought not to enter), *cert. denied,* 523 U.S. 1059 (1998); *Pomponio v. Fauquier County Bd. of Supervisors,* 21 F.3d 1319, 1327 (4th Cir. 1994) (en banc) ("[S]tate and local zoning and land use law is particularly the province of the State and . . . federal courts should be wary of intervening in that area in the ordinary case ... [because] [w]e can conceive of few matters of public concern more substantial than zoning and land use laws"); *Izzo v. Borough of River Edge,* 843 F.2d 765, 769 (3d Cir. 1988) (citations omitted) ("We share .

---

[8] According to Defendants, Mr. Haltom also had "actual notice" of the TRO, as he was in the courthouse on multiple occasions during the state court proceeding.  (*See* ECF No. 15-1, PP. 2-3).

. . the federal judiciary's traditional respect for local administration and control of land use regulation.  Federal courts have expressly disavowed any desire to sit as a statewide board of zoning appeals hearing challenges to actions of municipalities.  Land use policy customarily has been considered a feature of local government and an area in which the tenets of federalism are particularly strong.").

B.     *Middlesex* "Additional Factors"

Having determined that the state court action falls within one of the exceptional categories to which *Younger* abstention applies, the Court next must consider the three "additional factors" that the Supreme Court articulated in *Middlesex*, 457 U.S. at 432.  *See also Sprint*, 571 U.S. at 74.  Before invoking *Younger*, a federal court must consider:  (1) whether there is an ongoing state proceeding that is judicial in nature, (2) which implicates an important state interest, and (3) provides an adequate opportunity to raise federal challenges.  *Id.*

First, there can be no dispute that the underlying state action is ongoing and judicial in nature.  The City currently is attempting to enforce its zoning laws in a parallel state court action against Dr. John's, and against Plaintiff as one in active concert or participation with Dr. John's.

Second, the Court finds that the state court proceeding directly affects an "important state interest."  The Eighth Circuit has stated that "it is well-established that for abstention purposes, the enforcement and application of zoning ordinances and land use regulations is an important state and local interest . . . [and that] land use planning is a sensitive area of social policy which federal courts typically ought not enter."  *Night Clubs, Inc. v. City of Fort Smith, Ark.*, 163 F.3d 475, 480 (8th Cir. 1998) (internal quotation marks and citations omitted).  *See also Ken-N.K., Inc., v. Vernon Township*, 18 Fed. Appx. 319, 324 (6th Cir. 2001) (citations omitted) ("[A]n important

state and local interest . . . [is] the enforcement and application of zoning ordinances and land-use regulations.").

Finally, the Court concludes that the third *Middlesex* factor is also met.  The state court action unquestionably provides "an adequate opportunity" to raise federal challenges, particularly when one considers that Dr. John's previously raised constitutional challenges in that proceeding. Therefore, there is no question that the state case provides SI Resources an adequate opportunity to raise its federal claims, and thus, the third *Middlesex* factor is satisfied.

### C.   Exceptions to *Younger* Abstention

Having determined that the case falls within one of the categories of cases to which *Younger* abstention applies, and that the three *Middlesex* factors have been satisfied, the Court finds that abstention is proper unless one of the exceptions to *Younger* applies.  "[A] federal court should not abstain if there is a showing of 'bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate.'"  *Plouffe v. Ligon*, 606 F.3d 890, 893 (8th Cir. 2010) (quoting *Middlesex*, 457 U.S. at 435).  The Supreme Court has noted that these exceptions are "narrow."  *Huffman*, 420 U.S. at 611.

Nothing on the record before it leads this Court to conclude that the enforcement proceeding in the state court was motivated by bad faith or harassment on the part of any of the state actors involved.  As to "extraordinary circumstances," the Supreme Court has suggested that where one has an adequate opportunity to raise one's claims in state court proceedings, such exceptional circumstances do not exist.  *See Kugler v. Helfant*, 421 U.S. 117, 124-25 (1975) (emphasis added) (citation omitted) (The policy of equitable restraint expressed in *Younger* is founded on the premise that ordinarily a pending state proceeding "provides…a fair and sufficient opportunity for vindication of federal constitutional rights.  *Only if 'extraordinary circumstances'*

11

*render the state court incapable of fairly and fully adjudicating the federal issues before it, can*

*there be any relaxation of the deference to be accorded to the state . . . process*."). *See also Gillette*

*v. N.D. Disciplinary Bd. Counsel*, 610 F.3d 1045, 1048-49 (8th Cir. 2010) (finding no "exceptional

circumstance" where relevant issues could be raised in state proceedings).   In the present

circumstances, nothing alleged in the Complaint creates a plausible inference that the state court

cannot fairly and fully adjudicate the constitutional issues raised by Plaintiff.   Therefore, the Court

finds that no "exceptional circumstances" exist that would require the Court to decline abstention

under *Younger*.

    For the reasons stated herein, the Court holds that abstention is proper in this case.

Because the Court abstains on *Younger* grounds, it declines to address Defendants' alternative

motion in which it argues that SI Resources fails to state a claim upon which relief can be

granted.

<u>**CONCLUSION**</u>

    Accordingly,

    **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss pursuant to Rule

12(b)(1) (ECF No. 14) is **GRANTED**.   An appropriate Order of Dismissal will accompany this

Memorandum and Order.

    **IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss pursuant to Rules

12(b)(1) and 12(b)(6) (ECF No. 17) is **DENIED** as moot.


Dated this 2nd Day of April, 2021.


                        /s/ Jean C. Hamilton
                         UNITED STATES DISTRICT JUDGE

                              12